**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

MARTIN BAYZE,                          )
                                       )
           Plaintiff,                  )
                                       )     No. CIV 12-768-TUC-CKJ
vs.                                    )
                                       )
CAROLYN W. COLVIN, Acting              )        **ORDER**
Commissioner of the Social             )
Security Administration,               )
                                       )
           Defendant.                  )
                                       )

On February 14, 2014, Magistrate Judge Charles R. Pyle issued a Report and Recommendation ("RR") (Doc. 35) in which he recommended that this matter be remanded for an immediate award of benefits. Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("the Commissioner") has filed an Objection (Doc. 37) and Plaintiff Martin Bayze ("Bayze") has filed a response (Doc. 38).

I. *Report and Recommendation*

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). Further, under 28 U.S.C. § 636(b)(1), if a party makes a timely objection to a magistrate judge's recommendation, then this Court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." *See also Schmidt v. Johnstone*, 263 F.Supp.2d 1219, 1226 (D.Ariz. 2003) (reading the Ninth Circuit's decision in *Reyna-Tapia* as adopting the view that district courts are not required to review "any issue that is not the

1   subject of an objection"); *United States v. Reyna-Tapia*, 328 F.3d 1114 (9th Cir.2003)

2   (disregarding the standard of review employed by the district court when reviewing a report

3   and recommendation to which no objections were made).

4        The Commissioner argues the Administrative Law Judge's ("ALJ") weighing of the

5   medical opinion testimony and credibility finding are supported by substantial evidence. The

6   Commissioner requests this Court to affirm the ALJ's decision.   Alternatively, the

7   Commissioner requests the Court, if it find that substantial evidence does not support the

8   Commissioner's decision, to remand for further proceedings.

9

10   II.  *Standard of Review*

11        The findings of the Commissioner are meant to be conclusive, 42 U.S.C. §§ 405(g),

12   1383(c)(3), and a decision to overturn a denial of benefits is appropriate only if the denial "is

13   not supported by substantial evidence or [if the denial] is based on legal error." *Matney v.*

14   *Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992), *citations omitted*; *Massachi v. Astrue*, 486 F.3d

15   1149 (9th Cir. 2007).  "Substantial evidence is such relevant evidence as a reasonable mind

16   might accept as adequate to support a conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th

17   Cir. 2007).  The standard is less than a "preponderance of the evidence" standard. *Matney*,

18   981 F.2d at 1019.  Further, a denial of benefits is to be set aside if the Commissioner has

19   failed to apply the proper legal standards in weighing the evidence even though the findings

20   may be supported by substantial evidence. *Frost v. Barnhart*, 314 F.3d 359, 367 (9th Cir.

21   2002).  Indeed, this Court must consider both evidence that supports, and evidence that

22   detracts from, the conclusion of the ALJ. *Frost*, 314 F.3d at 366-67.

23

24   III.  *ALJ's Weighing of the Medical Opinion Evidence*

25        The Commissioner disagrees with the magistrate judge's finding that the ALJ's stated

26   reasons for rejecting the opinions of treating physicians Saul Perea, M.D., and Richard V.

27   Barnes, M.D., were insufficient.

28                                    - 2 -

A.  *Opinions of Treating Physicians*

Bayze's contact with treating physician Dr. Perea appears to have began in May 2006 when Bayze was taken to the hospital after his mother called 911 because Bayze threatened to cut his throat with a knife.  Bayze reported multiple suicide attempts and auditory hallucinations of voices telling him to kill himself.  Later in May 2006 and in June 2006, Bayze reported Risperdal and anti-depression medication made the voices tolerable. Subsequently, Bayze reported auditory hallucinations of multiple voices telling him to kill himself, increased irritability, problems sleeping, suicidal ideation, use of crystal meth and prior use of cocaine. Additionally, Bayze reported he was exposed to heavy solvents and paint fumes in his work as a painter for the past 20 years.

In August 2006, Perea observed that Bayze was clean, sober, and his auditory hallucinations were much improved.  A Mental Impairment Assessment indicated a history of depression with psychosis and at least one suicide attempt.  It was unclear if Bayze's symptoms were related to his chemical dependency.  Dr. Perea noted Bayze's auditory hallucinations were decreasing in frequency and intensity.  Additionally, Bayze's speech and memory were within normal limits and Bayze was not significantly limited in most areas of consideration.  Dr. Perea's diagnosis was psychotic disorder NOS.

In November 2006, another Mental Impairment Assessment was completed.  As summarized by the magistrate judge:

> Dr. Perea indicated that Plaintiff's memory was "fair abnormal", Plaintiff was unable to process detailed instructions, and the majority of his abilities to sustain concentration and persistence, to maintain appropriate social interactions (accept instruction and respond appropriately to criticism from supervisors and get along with co-workers), and to adapt, were limited to the extent that they were "abnormal". (AR. 835-37). Dr. Perea cited Plaintiff's psychosis NOS and the fact that Plaintiff was under acute pain treatment with narcotic medication. (AR. 836, 838; see also AR. 876 (Dr. Perea noted on November 20, 2006 that Plaintiff had recently been in a car accident, suffered neck strain and a concussion, and had been prescribed Hydrocodone)).

RR, p. 7.

Dr. Perea gave two opinions regarding Bayze's work-related abilities.  In August

2006, Dr. Perea opined that Bayze did not have any restrictions in his ability to perform daily activities, checked boxes on a form indicating that Bayze was not significantly limited in 17 areas of work-related functioning, and opined that Bayze's abilities "may be affected" in the other three areas of work-related functioning (Administrative Record ("AR") 534-37). In November 2006, Dr. Perea opined that Bayze was not significantly limited in only six areas of work-related functioning (as opposed to 17), was unable to process detailed instructions altogether, and had an "abnormal" ability to perform in the other 13 areas of work-related functioning, but that he "should be able to handle" activities of daily living (AR 835-38).

In August 2007, treating physician Dr. Barnes determined Bayze was not significantly limited (or that he was uncertain as to Bayze's abilities in many areas, and that Baze was mildly limited in the abilities to perform activities within a schedule, maintain regular attendance, be punctual, set realistic goals, and to make plans independently of others. Dr. Barnes' uncertainty was based on having seen Bayze only two times at that point, Bayze's denial of psychotic symptoms, and Dr. Barnes' lack of knowledge of whether Bayze could function in a work environment. As summarized by the magistrate judge:

> In an undated mental impairment assessment, with a "Received" stamp date of October 24, 2007, Dr. Barnes noted that Plaintiff was: markedly limited in the abilities to make simple work-related decisions, to complete a normal workday and work week without interruptions from psychologically based symptoms, to maintain socially appropriate behavior, to travel in unfamiliar places or to use public transportation, and to set realistic goals; moderately limited in the abilities to remember work procedures, understand simple instructions, understand and carry out detailed instructions, sustain an ordinary work routine without special supervision, work in combination or proximity with others, interact with the public appropriately, ask simple question, accept instructions and to respond appropriately to criticism from supervisors, get along with co-workers, respond appropriately to changes at work, and to be aware of normal hazards; and mildly limited in the abilities to carry out simple instructions, maintain attention, and to perform activities within a schedule. (AR. 1043-45). Dr. Barnes indicated that the limitations had lasted 12 months or would be expected to last 12 continuous months. (AR. 1045). Other than stating, "please see previously filed report", Dr. Barnes provided no basis for his decision. (AR. 1046). Later, in March 2008, Dr. Barnes completed a seriously mentally ill determination wherein he indicated that Plaintiff's personality disorder "cause[d] significant damage to...[Plaintiff's] education, livelihood, career, or personal relationships,"' Plaintiff performed significantly below expectations for cognitive/developmental level, was unable to work, attend school or meet other developmentally appropriate responsibilities, and there was "[a] qualifying diagnosis with probable chronic, relapsing and remitting course." (AR. 1150-51).

1  RR, pp. 8-9.  The ALJ rejected this second assessment because it was undated, objective

2  evidence did not support the findings, it was not consistent with Dr. Barnes' August

3  assessment, i.e., wherein he was unable to determine Bayze's ability to function in a work

4  environment, Bayze had not exhibited psychotic symptoms, and Bayze had previously been

5  non-compliant.

6

7  B.  *ALJ Reasons for Rejecting Opinions of Treating Physicians*

8          The ALJ gave little weight to Dr. Perea's opinions.  The ALJ determined Dr. Perea

9  had failed to adequately state the extent to which Bayze was limited and was based on a short

10  treatment period.  After approximately five months of treatment, Dr. Perea opined Bayze was

11  abnormal in multiple areas.  Although he did not define the extent of limitations, Dr. Perea

12  found he was limited as indicated.   While consideration of the length of treatment

13  relationship is appropriate, *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1038-39 (9th

14  Cir. 2003) (duration of treatment relationship and frequency and nature of contact relevant

15  in weighing opinion). the ALJ did not state any reason why the opinions could not be reached

16  after five months of treatment.  In evaluating evidence to determine whether a claimant is

17  disabled, the opinions of treating physicians are entitled to great weight.  *Curry v. Sullivan*,

18  925 F.2d 1127, 1129 (9th Cir. 1989).  The specific reasons given by the ALJ do not

19  legitimately support attributing little weight to Dr. Perea's opinion.  *Reddick v. Chater*, 157

20  F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) ("A

21  treating physician's opinion on disability, even if controverted, can be rejected only with

22  specific and legitimate reasons supported by substantial evidence in the record.").

23          The ALJ rejected Dr. Barnes' second assessment because it was undated, objective

24  evidence did not support the findings, it was not consistent with Dr. Barnes' August

25  assessment, i.e., wherein he was unable to determine Bayze's ability to function in a work

26  environment, Bayze had not exhibited psychotic symptoms, and Bayze had previously been

27  non-compliant.  The ALJ also noted Dr. Barnes' opinions as to moderated and marked

28                                                    - 5 -

1    limitations in most work-related functions were unrelated.  As to the ALJ's rejection based

2    on the assessment being undated, because the document included a received stamp date of

3    October 24, 2007, the Court finds this reason does not legitimately support attributing little

4    weight to Dr. Barnes' opinions.  Although the Commissioner argues the ALJ appropriately

5    gave Dr. Barnes' earlier opinion greater weight because it was better supported, 20 C.F.R..

6    § 4041527(c)(3), this fails to consider that Dr. Barnes' later opinion considered further

7    treatment of Bayze as established by objective evidence in the record (i.e., October 2007

8    COPE notes showed that Bayze was complaining of depression, out-of-control anger issues,

9    and hearing voices and he appeared compliant on medication since the August 2007

10   assessment).  In other words, contrary to the ALJ's conclusion, objective evidence in the

11   record supported the second assessment even though it differed from Dr. Barnes' August

12   2007 assessment.  The ALJ rejected the treating physician's opinion without specific and

13   legitimate reasons supported by substantial evidence in the record *Reddick*.

14

15   IV.  *ALJ's Weighing of the Examining Psychologist*

16        The Commissioner objects to the magistrate judge's finding that the ALJ's stated

17   reasons for rejecting portions of examining psychologist Dr. Rohen's opinion, and nurse

18   practitioner Ms. Joyce's opinion were insufficient.

19

20   A.  *Opinion of Examining Psychologist*

21        In November 2007, Bayze reported to Noell Rohen, Ph.D., a consulting examiner, that

22   he heard whispers every day, felt violent, and had lost his last job after three physical fights

23   with other crew bosses, had been in a fight two weeks before his appointment with Dr. Rohen

24   when he attacked a man he thought was attempting to harm him, had worked as a painter on

25   and off for twenty years, and was homeless although he sometimes stayed with friends.

26   Testing scores indicated Bayze's memory function was quite poor and suggested difficulties

27   in processing speed, attention, and cognitive flexibility.  During testing, Bayze was

28                                            - 6 -

overwhelmed, cried, and some tasks seemed too difficult for him and a task was discontinued when it became evident that Bayze's emotional response precluded his attending to those items. Dr. Rohen did not suspect malingering and his diagnoses included Psychotic Disorder NOS, Mood Disorder NOS, Polysubstance Dependence in Sustained Full Remission (no use reported since 5/06), rule out Cognitive Disorder Nos, and rule out Borderline Intellectual Functioning. Dr. Rohen opined that it was possible Bayze could stabilize, but if he did, the stabilization would eventually be followed by decompensation, as had been his pattern.[1]

Dr. Rohen opined that Bayze had mild limitations in his understanding and carrying out of simple instructions, his making simple work-related decisions, and his interacting appropriately with the public. He further opined Bayze had moderate limitations in his interacting appropriately with supervisors, his responding appropriately to usual work situations and his changes in a routine work setting. Dr. Rohen also opined Bayze had marked limitations in his understanding and carrying out complex instructions, his making complex work-related decisions, and his interacting appropriately with co-workers. Dr. Rohen also opined Bayze's ability to be consistent with appointments and provide for basic needs were impaired by psychiatric factors.

B. *ALJ Reasons for Rejecting Opinions of Treating Physician*

The ALJ gave some weight to Dr. Rohen's opinion, found some observations to be consistent with the overall evidence, but found evidence supported limiting Bayze's interactions with the public based on Bayze's anger difficulties and his history of conflict with others. The ALJ also concluded that Bayze can relate and interact with supervisors. The Court agrees with the magistrate judge that the record does not support the conclusion that Bayze's anger difficulties are limited solely to co-workers or members of the public and

---

[1]This finding is consistent with Bayze's history and the medical opinions discussed herein.

not supervisors.  In other words, substantial evidence of record does not support the finding that Bayze can relate and interact with supervisors.  In omitting Bayze' limitations as to his ability to work with supervisors and to maintain schedules, the ALJ did not specifically and legitimately reject Dr. Rohen's opinions.  *Lester*, 81 F.3d at 829-830.

V.  *ALJ's Weighing of the Nurse Practitioner*

The Commissioner objects to the magistrate judge's finding that the ALJ's stated reasons for rejecting the opinion of nurse practitioner Pat Joyce were insufficient.

A.  *Opinion of Nurse Practitioner*

Joyce cited to Bayze's chronic auditory hallucinations, irritable mood, difficulty with getting along with others, depression, and possible cognitive issues,[2] Joyce determined Bayze would be seriously limited in meeting competitive standards in many areas including maintaining regular attendance and being punctual, responding appropriately to supervisors, getting along with co-workers or the public, and understanding and carrying out detailed instructions.

B.  *ALJ Reasons for Rejecting Opinions of Nurse Practitioner*

Because Joyce was not an acceptable medical source, the ALJ did not give her opinions any weight.  The ALJ also determined Joyce's assessment was inconsistent with treatment notes, Global Assessment of Functioning scores and Bayze's daily activities of living. (AR. 35) The Court agrees with the magistrate judge that the ALJ may only discount such testimony by giving reasons germane to her testimony for doing so.  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Although Joyce's assessment may have been

---

[2]The July 2009 assessment included an illegible word and it is unknown what cognitive  issues to which the nurse practitioner was referring.

1    inconsistent with the treatment notes, it was largely consistent with the opinions of Drs.

2    Perea, Barnes, and Rohen.  While the Court does not think Joyce's opinions are entitled to

3    significant weight, the Court finds the substantial evidence in the record does not support the

4    wholesale rejection of Joyce's assessment.

5

6    VI.  *Credibility of Bayze*

7         The Commissioner objects to the magistrate judge's finding error with the ALJ's

8    evaluation of Bayze's testimony and the lay witness statements of record.  The Commissioner

9    points out (1) the ALJ found that the medical evidence did not support Bayze's claims and

10   showed improvement with medication compliance, *Bray v. Comm'r of Soc. Sec. Admin.*, 554

11   F.3d 1219, 1227 (9th Cir. 2009) (upholding credibility determination where ALJ pointed out

12   that claimant's statements at the hearing did not comport with objective evidence in her

13   medical record), (2) the ALJ noted Bayze's claims of disabling mental limitations were

14   inconsistent with the GAF scores which consistently indicated mild to, at most, moderate

15   symptoms, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (ALJ reasonably

16   discounted claimant's subjective complaints where a GAF rating indicated only mild

17   symptoms), (3) the ALJ noted Bayze's described level of functioning was inconsistent with

18   his alleged limitations, 20 C.F.R. § 404.1529(c)(3)(i) (stating an ALJ must consider a

19   claimant's activities), and (4) the ALJ noted inconsistencies in Bayze's testimony, 20 C.F.R.

20   § 404.1529(c)(4) (stating an ALJ must consider whether there are conflicts between a

21   claimant's statements and the rest of the evidence).  The Commissioner asserts that, because

22   the ALJ identified valid reasons for discounting Bayze's (and lay witnesses') subjective

23   complaints of disabling mental limitations, the ALJ's credibility finding should be affirmed.

24        Bayze has produced objective medical evidence of an underlying impairment that

25   could reasonably give rise to his symptoms.  Moreover, there has not been an affirmative

26   finding of malingering by the ALJ.  The ALJ's reasons for rejecting Bayze's testimony,

27   therefore, must be clear and convincing.  *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007).

28

1   "The ALJ must state specifically which symptom testimony is not credible and what facts

2   in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

3          The ALJ's finding that the medical evidence did not support Bayze's claims and that

4   he showed improvement with medication compliance is not a legitimate reason because it

5   does not take into account that the ALJ improperly rejected medical opinions.  Similarly, in

6   improperly rejecting the medical opinions, the ALJ did not consider the apparently cyclical

7   nature of Bayze's symptoms and whether/how that could affect GAF scores.   Moreover, the

8   Court agrees with the magistrate judge's assessment of evidence as to Bayze's credibility,

9   including alleged discrepancies:

> Plaintiff's testimony and medical records consistently reflect that he hears voices that make him violent and want to hurt himself and others, and make it difficult for him to concentrate on work.  (AR. 61, 390, 410, 1261, 1263-64, 1266, 1276, 1283). Plaintiff testified:  "I know people are talking about me everywhere....They follow me...no matter where I go, they're there. I just try to get away from it as much as possible because they just won't leave me alone." (AR. 110-11).  He believes he has special powers to fight evil (AR. 84, 1283; see also AR. 1241(COPE note that Plaintiff may be delusional based on report he has been "drained out due to dealing with evil spirits.' [Plaintiff] reports that these spirits are real and that they try to hurt people.")).  He is homeless and lives in the desert, staying with friends when he can and stopping by his brother's. (AR. 99 (he had stayed with his brother for a time until he broke his brother's nose and was made to leave); see also AR 32 (ALJ acknowledging Plaintiff is homeless5)).  As the ALJ points out, the record does reflect periods of Plaintiff's non-compliance with treatment. However, the ALJ's reliance on Plaintiff's comments at various times that medication resulted in a "decrease in auditory hallucinations, often making the voices 'tolerable'..." and has increased his appetite and sleep (AR. 32) is of little value given that the record is replete with Plaintiff's continued complaints of depression and auditory hallucinations, even when taking medication.  Such comments about improvement "must be read in context of the overall diagnostic picture...."  *Holohan*, 246 F.3d at 1205. That a person who suffers from severe psychiatric issues "makes some improvement does not mean that the person's impairments no longer seriously affect [his] ability to function in a workplace." *Id*.  Nor do the records cited by the ALJ necessarily support the ALJ's conclusion that medication manages Plaintiff symptoms in such a way as to render him able to function in the workplace when those records are considered in context or considered on the record as a whole.

> In rejecting Plaintiff's credibility, the ALJ stated on more than one occasion that Plaintiff had been able to maintain employment in the past despite cognitive limitations and claims of inability to maintain concentration, persistence and pace. (AR. 33).  "[T]he fact that a person holds down a job doesn't prove that he isn't disabled, because he may have a careless or indulgent employer or be working beyond his capacity out of desperation." *Henderson v. Barnhart*, 349 F.3d 434, 435 (7th Cir.2003).  Further, the ALJ's observation that Plaintiff was able to graduate from high school, omits the fact that he did so while placed in special education classes.

- 10 -

The ALJ also pointed out that Plaintiff cleans his brother's yard, has been seen digging in his brother's yard, is able to walk or hitchhike to various places for food and to take a shower, and is able to obtain food from the food bank. (AR. 33). Nothing about these abilities signifies that Plaintiff spends a substantial part of his day engaged in pursuits involving the performance of functions that are transferrable to a work setting. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Vick v. Comm'r. of Soc. Sec.*, 57 F.Supp.2d 1077, 1086 (D. Or. 1999) ("If claimant's activity is in harmony with her [or his] disability, the activity does not necessarily indicate an ability to work."). Moreover, the cited activities are not inconsistent with Plaintiff's limitations, including his inability to get along with co-workers, the public, and supervisors.

The ALJ also found that Plaintiff "denied..." going to the casino with his mother and working out at the gym. (AR. 33). In June 2010, Plaintiff told COPE Dr. Krasevic that he "[l]ikes to go to the casino with his mother.....Likes to go to the gym." (AR. 1142). At the December 1, 2010 hearing, the ALJ asked Plaintiff whether he went to the casino with his mother, to which he replied: "No, a couple of times and they–I got–they threw me out because people were talking about me....[M]y mom doesn't take me anywhere with her no more." (AR. 111). He also stated he did not go to the gym earlier that year: "No ma'am. My mom tried to get me into getting into the gym, but I just can't be around people." (*Id.*). That he "likes" going to the gym is not the same as actually going to the gym.

In sum, the substantial evidence of record, when viewed as a whole, does not support the ALJ's cited reasons discounting Plaintiff's subjective complaints by neither specific and legitimate reasons, nor clear and convincing evidence.

RR, pp. 17-19.

As to the statements of Bayze's mother and girlfriend, the ALJ improperly rejected the reports because of bias based on the witnesses' relationship with Bayze. *Smolen*, 80 F.3d at 1289 (lay witnesses who see a claimant everyday are of particular value; such witnesses will often be family matters). The ALJ did not state clear and convincing reasons for rejecting the testimony of the lay witnesses.

*Remand for Benefits or Remand for Further Development*

The Commissioner asserts the appropriate remedy is remand for further proceedings. A reviewing court should "credit improperly rejected evidence" and remand the matter for an award of benefits when:

(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

- 11 -

1  *Bunnell v. Barnhart*, 336 F.3d 1112, 1115 (9th Cir. 2003).  However, "[r]emand for further

2  administrative proceedings is appropriate if enhancement of the record would be useful."

3  *Benecke v. Barnhart*, 379 F.3d 587, 593, (9th Cir. 2004) (*citing Harman v. Apfel*, 211 F.3d

4  1172, 1178 (9th Cir. 2000)).  "'[T]he decision whether to remand the case for additional

5  evidence or simply to award benefits is within the discretion of the court.'"  *Rodriguez v.*

6  *Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (*quoting Stone v. Heckler*, 761 F.2d 530, 533 (9th

7  Cir. 1985)).

8          Here, remand for an immediate award of benefits is appropriate.  The ALJ did not

9  provide adequate reasons for rejecting medical opinions and lay witnesses, including Bayze.

10 Further, "[t]he substantial evidence of record overwhelmingly supports the conclusion that

11 Plaintiff must not only avoid co-workers and the public as the ALJ found, but that his ability

12 to interact appropriately with supervisors and to maintain a regular schedule is also limited."

13 RR, p. 20.  The application was reconsidered by the ALJ once upon remand from the Appeals

14 Council and Bayze's application for benefits has been pending for over seven years.

15

16         Accordingly, after an independent review, IT IS ORDERED:

17 1.       The Report and Recommendation (Doc. 35) is ADOPTED.

18 2.       The decision of the ALJ is REVERSED;

19 3.       This matter is REMANDED for an award of benefits, and;

20 4.       The Clerk of the Court shall enter judgment in this case and shall then close

21 its file in this matter.

22         DATED this 20th day of May, 2014.

23

24

25                                      _____
                                        Cindy K. Jorgenson
26                                      United States District Judge

27

28                                      - 12 -